IN THE UNITED STATES DISTRICT COURT
FOR DISTRICT OF KANSAS

Justing Spiehs

    Plaintiff

v.      Case No. 5:25-cv-04117-TC-BGS

Topeka & Shawnee County Public Library et al

    Defendants

**OPPOSITION TO STIEHLER'S MOTION TO DISMISS (ECF 11)**

Defendant Stiehler's motion to dismiss is fatally flawed as it rewrites the Complaint's allegations and then in doing so comes to an erroneous legal analysis. Under the four tests articulated by the Tenth Circuit, defendant Stiehler is a state actor.

**Overview**

Dr. Spiehs appeared at a Shawnee County public library which is a designated public forum: (1) Library meeting room open to the public Complaint (¶¶9-10, 12); (2) Used for civic/political expression and meetings; (3) Plaintiff entered "publicly accessible area" (¶13); and (4) Library's own policy permits meetings and events (¶9).

This library is a designated public forum similar to a public sidewalk. Few spaces embody the First Amendment's marketplace of ideas more directly than a public library. *Brown v. Louisiana*, 383 U.S. 131, 142 (1966). Public libraries are not nonpublic enclaves—they are designated public fora. The Tenth Circuit settled this question in *Doe v. City of Albuquerque*, 667 F.3d 1111, 1129 (10th Cir. 2012), holding that the "Albuquerque Public Library is a designated public forum for the receipt and

1

communication of information." The reason is straightforward: libraries exist to facilitate the free exchange of ideas. They invite "all members of the public" to enter, read, study, meet, and communicate without advance approval or viewpoint screening. *Id.*; *Southeastern Promotions, Ltd. v. Conrad*, 420 U.S. 546, 555 (1975) (when government opens property to expressive activity, it creates a public forum). Shawnee's library operates identically. Its policies permit displays, literature distribution, public programming, author talks, and community meetings—all without prior viewpoint review.

**Nothing Dr. Spiehs Did or Said Was Disruptive**

Dr. Spiehs "silent and calm nonverbal expressive conduct" (¶7) was not disruptive. He silently displayed signs. (¶¶12-13). When Stiehler pronounced "obscene gestures could get you removed from this location" Dr. Spiehs silently "extended his middle finger as part of his silent expressive conduct to demonstrate that such gestures are protected by the First Amendment. This demonstration was nonverbal, momentary, and not directed at any individual." (¶16). This is completely protected speech in a designated public forum.

**Stiehler the Enforcer of Rules  Announced an Enforceable Conduct Standard**

The complaint alleges that "Stiehler told her audience that obscene gestures could get you removed from this location, referring to potential consequences for constitutionally protected gestures" (¶13) and that Topeka & Shawnee County Public Library (TSCPL) "vested Stiehler, as presenter, with apparent authority to identify allegedly 'improper' conduct and to trigger security responses, which staff followed.

2

Her statement to the audience that gestures 'could get you removed' reflected a role delegated to her by Library staff." ¶¶14-15. The Complaint further described her status and relationship:

> 25, Stiehler's statement that 'obscene gestures could get you removed from this location' demonstrated specific, advance knowledge of TSCPL's enforcement practices and removal authority. She did not state this as opinion or prediction, but as an authoritative announcement of the rules governing conduct in the library meeting room.
> 26. Upon information and belief, Stiehler possessed this knowledge because TSCPL officials briefed her before the presentation regarding what conduct would trigger removal and instructed her to notify security of any such conduct.
> 27. Stiehler's statement effectively announced to the audience that she had authority to determine what conduct warranted removal, and that library security would enforce her determinations. No TSCPL staff member present corrected this representation or asserted independent authority over removal decisions.

When Dr. Spiehs made is silent finger gesture, Stiehler identified that as a violation, approached defendant Gaul and told him "he needed to do something about it." (¶19). Responding, Gaul then told Dr. Spiehs his silent finger gesture was not permitted (¶19). "Stiehler intentionally directed Gaul to remove Plaintiff based on disagreement with Plaintiff's viewpoint, and Gaul acted on her direction without exercising independent judgment." (¶17). "The removal would not have occurred absent Stiehler's instruction and prompting. Together Stiehler's and Gaul actions were State Action. As demonstrated below,

## FOUR TESTS

A private actor can be accountable as a state actor in which the closeness of the private actor's entanglement with the government under myriad analytical frameworks. *See Gallagher v. Neil Young Freedom Concert*, 49 F.3d 1442, 1447 (10th Cir. 1995) (taking "flexible approach" applying a "variety of tests to the facts of each

3

case"). The four tests are: (1) the nexus test, (2) the joint action test, (3) the public function test, and (4) the symbiotic relationship test. *Wittner v. Banner Health,* 720 F.3d 770, 775 (10th Cir. 2013).

**Nexis Test** "Nexus exists only when a state has exercised coercive power over the challenged activity." *Wittner* at 775. Stiehler challenged the finger gesture and she invoked the "State's exercise of coercive power." *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n,* 531 U.S. 288, 296(2001).

**The Joint Action Test** This test is satisfied when state officials and the private party act in concert in effectuating the particular deprivation of constitutional rights. *Gross v. Samudio,* 630 F. App'x 772, 779 (10th Cir. 2015) Stopping Dr. Spiehs from silently showing a finger violated his Constitutional rights which stopping that gesture was the specific goal. *Gallagher* at 1455.

**The Public Function Test** Determining what speech can occur in a designated public forum is clearly a traditional and exclusive function of the state. *Gallagher*, at 1447. And directing the State authorities to remove Dr. Spiehs from the public forum (¶17) is also a traditional and exclusive function of the State.

**Symbiotic Relationship Test** This test is satisfied because the state insinuated itself into a position of interdependence with a private party such that it must be recognized as a joint participant in the challenged activity. *Wittner*, at 778. Stiehler stated the rule, cited Dr. Spiehs as violating her rule, and then directed the State to stop the gesture and remove Dr. Spiehs from public property.

**The Function Test**: Stiehler performed functions that are:

- Traditionally governmental (announcing forum rules)
- Exclusively governmental (ordering exclusions from public forums)
- Performed in coordination with state officials

**What She Did = What Only Government May Do:**

- In a designated public forum, a private citizen cannot announce binding conduct rules
- A private citizen cannot identify violations of those rule.
- A private citizen cannot order someone removed from public property
- A private citizen's viewpoint determinations cannot be the basis for government exclusions

Joint Action Test

- Pre-event briefing and planning (¶26)
- Stiehler's advance announcement establishing standard (¶25)
- Security's presence and positioning (¶12, 18)
- Immediate, unquestioning execution of Stiehler's directive (¶¶17, 28-29)
- No independent policy review (¶28)
- TSCPL and Stiehler "jointly administered the rules" (¶29)

## Stiehler's Arguments Rewrite the Facts

In a way Stiehler seems to infer that it had some arrangement with the Library that transformed the meeting area within the library into its own temporary private property of Loud Light. There is nothing in the Complaint that states Stiehler was issued a permit by the Library to exclude individuals or suppress speech. Stiehler flip flops between claiming she had authority to make her own rules and then reversing herself to say she had no actual authority. Either way her conflicting positions and

5

statements do not make it so and the facts clearly shows she exercised prohibitions against Dr. Spiehs speech and his presence at the Library. Her recharacterization as being merely an observer and non-involved "event host" fails for the same reasons. And irrespective of the label, one supposes that "event hosts" are not immune from being state actors. Her claim that there was no joint action ignores the complaint allegations. Stiehler's reliance on *Halleck* has no merit. In *Halleck*, a private entity owned and operated the forum. *Halleck* is not a state-action shield for private actors who regulate speech on government property using government security. Here, government owns the property – hence why a library is a designated public forum. So yes, private forum operators, like private owners, can exclude – i.e. no shirt, no shoes, no service. But the library is not private property and the its designation as a public forum cannot be altered on Stiehler's say so. Similarly, *Lee v. Katz* supports the plaintiff. There is nothing in the Complaint that states the Library divested itself contractually of speech control while on that property. In *Lee*, a private company had leased an outdoor area adjacent to a city-owned arena, coliseum, and other public buildings in Portland. *Id.* at 551. In its administration of the area, the company restricted where and how speech could occur in the area, specifically by creating a few "Free Speech Zones" within the area. *Id.* at 552. The company enforced these policies with private security officers. *Id.* at 553.

  Courts have recognized that regulation of speech in a public forum is "a traditional and exclusive public function." *Lee* at 556. .*Lee* held that "in regulating speech within the [outdoor area] the [company] performs an exclusively and

traditionally public function within a public forum," and therefore should be treated as a state actor under § 1983. *Id.* at 554. It concluded that the outdoor area was quintessentially public, because it "functions as a freely accessible public forum through which people pass on their way to shows, concerts, games, and restaurants" and as "a gathering place for public events," including a recent massive public vigil. Id. at 555. By regulating speech in the area to the exclusion of the city, the Circuit held the company was performing a traditional state function so as to expose it to § 1983 liability. *Id.* at 556.

The other problem for Stiehler is the fact she used government security to enforce – which whipsaws her claim that she somehow was given contractual authority to make her own speech rules yet while using government security and law enforcement. Stiehler can't have it both ways.

Stiehler has no authority to convert a designated public forum in something less and in fact she coordinated with government to elevate herself to a private viewpoint gatekeeper merely because the library allows Stiehler to conduct a meeting on library grounds. Had Stiehler been content to merely bluff as a moderator would have been one thing: but she went far beyond that as she carried a big stick of enforcement called government who backed her up in a predisposed and planned joint arrangement. Since Stiehler and the Library defendants were knowingly and pervasively entangled in the prohibition of Dr. Spiehs' protected speech, Stiehler was a state actor when it interfered with Dr. Spiehs' expressive activities as well as his right to associated at the Library..

7

## Conclusion

Stiehler's attempt to reframe her conduct as "mere reporting" collapses under even minimal scrutiny. Reporting presupposes the existence of an independent, pre-existing rule against which conduct is measured. Yet the only "rule" invoked here was Stiehler's own pronouncement to the audience: "obscene gestures could get you removed from this location." She created the standard, declared Plaintiff in violation of it, and then directed security to enforce it. That is not reporting—it is the full regulatory sequence from rulemaking to enforcement. True reporting would involve alerting officials to a violation of an established library policy; instead, Stiehler "reported" deviation from her own ad hoc rule about removable conduct in a designated public forum. She manufactured the rule and then triggered state enforcement of it. That is lawmaking and law enforcement—functions that are exclusively governmental within a public forum.

Defendant's motion also collapses under its own contradictions. She insists she had "no authority," yet she exercised authority by announcing enforceable rules to the audience. She claims she "didn't participate," yet she personally asked security to remove Plaintiff. She portrays herself as "powerless," yet she unilaterally declared that certain expressive conduct "could get you removed from this location." And she characterizes her conduct as "mere reporting," yet what she reported was not neutral observation but her own determination that Plaintiff's protected expression was removal-worthy. These are distinctions without a difference. Under the Tenth Circuit's state-action doctrine, a private actor who announces rules in a designated

public forum, identifies supposed violations, and triggers state enforcement is a state actor under every applicable test. Defendant cannot evade § 1983 liability by simultaneously claiming she lacked authority while admitting she exercised it.

As pled, Stiehler meets each of the four tests of being a State actor articulated by the Tenth Circuit and her motion to dismiss should be denied.

/s/Linus L. Baker
Linus L. Baker, KS 18197
6732 West 185th Terrace
Stilwell, KS  66085-8922
Telephone:  913.486.3913
Fax:            913.232.8734
E-Mail: linusbaker@prodigy.net
Attorney for the plaintiff

Certificate of Service
The above was provided notice to all parties entitled to such notice pursuant to the Court's electronic filing system.

/s/Linus L. Baker
Attorney for the plaintiff