IN THE UNITED STATES DISTRICT COURT
FOR DISTRICT OF KANSAS

Justing Spiehs

Plaintiff

v.                                          Case No. 5:25-cv-04117-TC-BGS

Topeka & Shawnee County Public
Library et al

Defendants

OPPOSITION TO GAUL'S MOTION TO DISMISS

**Defendants Omit the Threshold Forum Analysis, Which Is Step One, and the Library Is a Designated Public Forum**

Defendants' motion fails at the threshold because it never performs the required forum analysis. That omission is dispositive. In any First Amendment case involving speech on government property, the Court's first task is to identify the nature of the forum. This foundational error infects the entire motion. Few spaces embody the First Amendment's marketplace of ideas more directly than a public library. *Brown v. Louisiana*, 383 U.S. 131, 142 (1966). Public libraries are not nonpublic enclaves—they are designated public fora. The Tenth Circuit settled this question in *Doe v. City of Albuquerque*, 667 F.3d 1111, 1129 (10th Cir. 2012), holding that "[t]he Albuquerque Public Library is a designated public forum for the receipt and communication of information." The reason is straightforward: libraries exist to facilitate the free exchange of ideas. They invite "all members of the public" to enter, read, study, meet, and communicate without advance approval or viewpoint screening. *Id.*; *Southeastern Promotions, Ltd. v. Conrad*, 420 U.S. 546, 555 (1975) (when government opens property to expressive activity, it creates a public forum).

1

By opening its space to indiscriminate public expression, the Library became a designated public forum subject to strict scrutiny. *Shurtleff v. City of Boston*, 142 S. Ct. 1583, 1589 (2022); *Lamb's Chapel v. Ctr. Moriches Union Free Sch. Dist.*, 508 U.S. 384, 391 (1993). The Library has "failed to exercise the clear and consistent control required to maintain a limited public forum." *Hopper v. City of Pasco*, 241 F.3d 1067, 1080 (9th Cir. 2001). "Forum status is an inherently factual inquiry about the government's intent and the surrounding circumstances that requires the district court to make detailed factual findings." *Verlo v. Martinez*, 820 F.3d 1113, 1144 (10th Cir. 2016).

### Gaul's "Conduct, Not Speech" Reframing Fails on the Pleadings, Fails Under *Chiles*, and Ignores the Court's Prior Video-Related Ruling

Gaul's motion depends on a relabeling exercise. He says he merely "responded to a disruption during a public program," warned Plaintiff to stop "the conduct at issue," and removed Plaintiff only after Plaintiff refused to comply. He repeats that framing throughout the motion, characterizing the case as one about "conduct," not protected expression. But that is not the Complaint the Court must accept at Rule 12(b)(6). The Complaint alleges silent sign-holding, a brief nonverbal symbolic gesture, no loud speech, no threat, no safety issue, no identified rule, and no statement by any officer or library employee that Plaintiff was disruptive. It further alleges that when Plaintiff asked what rule he had violated, Gaul cited none.

The Supreme Court has now rejected exactly this type of defense-by-label. In *Chiles v. Salazar,* No. 24–539 (U.S. Mar. 31, 2026), the Court held that when the government tries to defend a speech restriction by redescribing it as "conduct,"

"treatment," or some other non-speech category, "[t]he State's premise is simply mistaken." The Court explained: "Her speech does not become conduct just because the State may call it that. Nor does her speech become conduct just because it can also be described as a 'treatment,' a 'therapeutic modality,' or anything else. The First Amendment is no word game." And it emphasized that "what matters is not how a government describes its law or whether the law may regulate conduct in other circumstances. What matters is whether, in fact, the law regulates speech in the case at hand." That principle controls here.

As pled, what Gaul regulated was expressive activity itself. The Complaint alleges Plaintiff engaged in "core political expression: silent sign-holding and a brief symbolic gesture on matters of public concern," and that Gaul ordered Plaintiff to stop "symbolic political expression." Gaul does not identify some separate, non-expressive act he regulated. He instead tries to collapse the expressive act into "disruption" and "conduct." *Chiles* forbids that move. Where the only thing being regulated is expression, the restriction is speech-based even if the government prefers another label.

Gaul's framing is especially untenable because it ignores the Court's earlier order denying the Library's motion to strike the Complaint's reference to the video and sworn statement. The Court already held that Plaintiff could plead the existence of the video, incorporate it by reference, and describe the events depicted there without attaching the file on CM/ECF. The Court expressly rejected the Library's attempt to strike those allegations and held that "[t]he Complaint identifies the video

and incorporates it by reference, which is all that is required at the pleading stage." The Court further recognized Plaintiff's position that the sworn statement "describes the events depicted on the video and provides a first person evidentiary account of the August 30, 2025 incident."

That prior ruling matters here. Gaul's motion asks the Court to do indirectly what the Library already failed to do directly: strip the case of the pleaded video-backed factual context by reframing it as an ordinary "disruption" response. But the Court has already ruled that the video allegations and sworn account properly remain part of the pleading. So at this stage the Court must evaluate Gaul's motion against the Complaint as pled, including the incorporated video description showing "silent and calm nonverbal expressive conduct," not against a defense rewrite that substitutes "disruption" for expression.

Nor can Gaul salvage the argument by adding facts the Complaint does not contain. His motion asserts Plaintiff was "extending the middle finger in the personal space of" presenters. The Complaint alleges the opposite: the gesture was "nonverbal, momentary, and not directed at any individual." At Rule 12(b)(6), Gaul cannot convert protected symbolic expression into punishable "conduct" by appending defense-favorable facts absent from the pleading and then demanding dismissal on that altered record.

Nor is this cured by the assertion that Gaul issued only a contemporaneous directive. The Complaint alleges Gaul told Plaintiff he was not allowed to "do that with his finger," cited no rule, and removed him when he repeated the gesture. That

4

is not neutral enforcement of a preexisting conduct code. It is ad hoc suppression of expression under no articulated standard. Chiles rejected the same kind of maneuver when Colorado argued it was regulating only "conduct" or a "therapeutic modality"; the Supreme Court answered that, as applied, the law regulated what the speaker "may say," and the effort to recast speech as conduct failed.

Finally, *Chiles* is especially apt because it rejected the idea that courts may look past the actual regulated expression by abstracting upward to a more general category. There, the State said it regulated "treatment"; here, Gaul says he regulated "disruption." In both settings, the defense tries to avoid meaningful First Amendment review by renaming expression. The Supreme Court's answer is the same: labels do not control; the actual speech restriction alleged does.

Gaul's motion therefore fails for three independent reasons. First, it contradicts the Complaint's allegations that Plaintiff engaged only in silent, nonthreatening expressive activity and that no rule was identified. Second, it relies on the very kind of "conduct" relabeling the Supreme Court rejected in Chiles. Third, it disregards the Court's prior ruling that the video allegations and sworn factual account properly remain part of the pleading and may not be functionally erased through a motion practice substitute.

**No Qualified Immunity**

Gaul is not entitled to qualified immunity. By August 2025, it was clearly established that a government official may not retaliate against protected speech by imposing a ban, threatening legal consequences, or otherwise using exclusion from

government-controlled space as punishment for criticism. *Czaplinski v. Ballard*, No. 25-2057-JWB, 2025 WL 2986832, at \*4–5 (D. Kan. Oct. 23, 2025). *See Vollmecke v. Indep. Sch. Dist.*, 753 F. Supp. 3d 792, 809 (W.D. Mo. 2024) (denying qualified immunity and recognizing that exclusion and restrictions imposed in response to protected speech can constitute actionable First Amendment retaliation and chilling injury).

*Czaplinski* is especially instructive because it rejects the same basic move Gaul makes here. There, the defendant argued that the plaintiff had no constitutional right to be on school property and that school officials retained authority to regulate conduct on school grounds. Judge Broomes held that this framing missed the point. The plaintiff did "not need to show that he has a constitutional right to be on school property to succeed on his claim that Defendant retaliated against him by banning him from school property." *Id.* at \*3. Instead, the relevant rule was the one stated in Seamons: "The government may not deny a benefit to a person on a basis that infringes his constitutionally protected interests—especially, his interest in freedom of speech—even though the person has no right to the valuable governmental benefit and even though the government may deny him the benefit for any number of reasons." Id. (quoting *Seamons v. Snow*, 84 F.3d 1226, 1236 (10th Cir. 1996)).

That reasoning directly applies here. Gaul's motion tries to reduce this case to a routine decision to remove a disruptive person from a library program. But the Complaint alleges protected expression, not disruption: Plaintiff silently displayed political signs, briefly used a nonverbal symbolic gesture, spoke no words, threatened

6

no one, and violated no identified written rule. Gaul allegedly cited no policy at all when asked what rule Plaintiff had violated. Under *Czaplinski*, Gaul cannot avoid First Amendment scrutiny by recasting the case as mere property or conduct control. The question is not whether the Library could generally regulate use of its space. The question is whether Gaul used exclusion as retaliation for protected expression. *Czaplinski* says that claim is viable and defeats qualified immunity at the pleading stage. 2025 WL 2986832, at *3–5.

The chilling-effect point is also clearly established. As Judge Broomes explained, "banning a parent from school grounds and all school activities after the parent called to communicate concerns regarding bullying of his child would chill an ordinary person from continuing to complain to school officials." *Czaplinski*, 2025 WL 2986832, at *4. In making that point, the court relied on *Schmidt v. Huff,* No. 25-CV-2081-EFM, 2025 WL 2374153, at *8 (D. Kan. Aug. 14, 2025), which held that banning a parent from school property is sufficient to establish chilling effect on speech, citing *McCook v. Springer Sch. Dist.,* 44 F. App'x 896, 905 (10th Cir. 2002), and *Vollmecke* at 809. The same principle applies here. Being removed from a public library meeting room and issued a trespass citation because of protected symbolic expression would chill an ordinary speaker from repeating that expression.

The same is true of retaliatory motive. In *Czaplinski*, the court held that the temporal relationship between the plaintiff's complaints and the ban, along with the defendant's stated reasons, plausibly supported an inference of retaliatory motive. 2025 WL 2986832, at *4. Here, the Complaint alleges that Gaul acted only after

7

Stiehler complained about Plaintiff's expressive gesture, cited no neutral rule, and removed Plaintiff specifically because he repeated the expressive act. At Rule 12(b)(6), that is more than enough to support an inference that the adverse action was substantially motivated by Plaintiff's protected expression.

Most importantly, *Czaplinski* squarely addresses clearly established law. Judge Broomes held that, faced with allegations that a plaintiff made complaints and criticisms and was then banned, prohibited from contact, and threatened with legal consequences, the defendant "was on notice" that such conduct was barred by the First Amendment. 2025 WL 2986832, at *5. The court emphasized that it has "long been clearly established that the First Amendment bars retaliation for protected speech and association." *Id.* Those are the same foundational authorities that govern here.

Thus, *Czaplinski* supplies both the analysis and the conclusion. An official cannot invoke qualified immunity by saying this was only conduct regulation, this was only property control, or the plaintiff had no free-standing right to remain in the space. Where exclusion is imposed because of protected criticism or expression, the First Amendment is implicated, the claim is plausible, and the law is clearly established. *Id.* at *3–5.

Accepting the Complaint's allegations as true, every reasonable official would have understood that removing a silent speaker from a public library meeting room for protected symbolic expression, under no identified rule and absent any actual

8

disruption, violated the First Amendment. Gaul therefore is not entitled to qualified immunity.

**Plaintiff Plausibly Alleges First Amendment Retaliation**

Plaintiff states a classic retaliation claim.[1] To plead First Amendment retaliation, a plaintiff must allege protected activity, adverse action that would chill a person of ordinary firmness, and a causal connection between the two. *Worrell v. Henry,* 219 F.3d 1197, 1212 (10th Cir. 2000); *Van Deelen v. Johnson,* 497 F.3d 1151, 1155–56 (10th Cir. 2007). The Complaint does exactly that.

First, Plaintiff alleges protected activity. He silently displayed political signs and briefly used a symbolic gesture on a matter of public concern. Silent political expression and symbolic expression are core First Amendment activity. Second, Plaintiff alleges adverse action. Gaul did not merely disagree with Plaintiff; he had him removed from the meeting room and issued a trespass citation. That would chill an ordinary person from continuing to engage in the same expression. *See Czaplinski* (ban sufficient to chill ordinary speaker); *Schmidt v. Huff.* Finally, the Complaint plausibly alleges causation. Gaul acted immediately after Stiehler complained about Plaintiff's expressive gesture; he told Plaintiff he could not "do that with [his] finger"; when Plaintiff repeated the expressive act, Gaul removed him. The Complaint alleges

---

[1] Plaintiff does not oppose dismissal of any official-capacity claim against Defendant Gaul as redundant because the Library is already named as a defendant. Any such dismissal would not affect Plaintiff's claims against Gaul in his individual capacity or against the Library.

no intervening disruption, threat, safety problem, or rule violation. On those facts, retaliatory motive is not speculative; it is the most natural inference.

Gaul's response ignores the actual retaliation theory and instead assumes he may remove a speaker whenever he labels the expression "conduct." But *Czaplinski* forecloses that move. The question is not whether officials generally retain authority over public property. The question is whether they used exclusion as punishment for protected expression. *Czaplinski* at \*3–5. The Complaint plausibly alleges exactly that. Count I therefore survives.

**Plaintiff Plausibly Alleges Content and Viewpoint Discrimination**

The Complaint also plausibly alleges that Gaul engaged in content- and viewpoint-based suppression of speech. "Giving offense is a viewpoint." *Matal v. Tam*, 582 U.S. 218, 243 (2017). And viewpoint discrimination is impermissible in any forum. *Rosenberger v. Rector & Visitors of Univ. of Va.,* 515 U.S. 819, 829 (1995). Once the government targets a speaker because of the communicative impact of what he says—or how he expresses it—the First Amendment is implicated.

That is what the Complaint alleges here. Plaintiff's signs conveyed a pro-life political message. His brief gesture was expressive and symbolic. Gaul did not cite a neutral rule about proximity, noise, obstruction, or safety. He objected to the expressive act itself: Plaintiff was allegedly told he could not "do that with [his] finger." On the pleadings, then, Gaul did not regulate some noncommunicative byproduct of Plaintiff's conduct. He regulated the meaning-bearing act itself.

10

Nor does the motion identify any actual viewpoint-neutral standard that was applied. Instead, it relies on labels such as "disruption," "conduct," and "obscene gesture." But as *Chiles* now confirms, speech does not become mere conduct because the government chooses to redescribe it. *Chiles v. Salazar*. And as the Complaint alleges, no one said Plaintiff was loud, threatening, obstructive, or unsafe. The only thing being targeted was the message-bearing act. That is enough to plead content and viewpoint discrimination. At minimum, the Complaint alleges that Gaul punished expression because it was offensive or unwelcome. That is the essence of viewpoint discrimination. The Court should therefore deny dismissal of the content- and viewpoint-discrimination claims.

**Plaintiff Plausibly Alleges a Prior Restraint and Standardless Discretion**

The Complaint also states a prior-restraint claim. A prior restraint exists where an official prohibits future expression under a regime lacking narrow, objective, and definite standards. *Shuttlesworth v. City of Birmingham,* 394 U.S. 147, 150–51 (1969); *Forsyth Cnty. v. Nationalist Movement*, 505 U.S. 123, 130–33 (1992). That is precisely what Plaintiff alleges.

Gaul warned Plaintiff that he was "not allowed" to repeat the expressive gesture and would be removed if he did so. That was not punishment for completed conduct alone. It was an advance prohibition on further expression. When Plaintiff tested that warning by repeating the gesture, Gaul enforced it. The Complaint further alleges that when Plaintiff asked what rule he had violated, Gaul identified none. Thus, the restraint was imposed without any written policy, objective standard, or

11

definite rule. That is not permissible time, place, and manner regulation. It is ad hoc censorship. A public official cannot announce on the spot that a speaker is "not allowed" to engage in expression, cite no governing standard, and then claim the action was merely routine management. The First Amendment does not tolerate such standardless power over expression. *See Shuttlesworth*, 394 U.S. at 150–51; F*orsyth County,* 505 U.S. at 133. Because the Complaint alleges that Gaul prospectively forbade Plaintiff's expressive act under no identified standard, the prior-restraint and unbridled-discretion theory is plausibly pled.

**Plaintiff Plausibly Alleges a Procedural Due Process Violation**

The Complaint likewise states a procedural due process claim. At minimum, Plaintiff alleges exclusion from a public library meeting room and issuance of a trespass citation without notice of any rule, without explanation of any standards, and without any meaningful process. That is enough at the pleading stage.

A public library is a constitutionally significant place for the receipt and communication of information. Plaintiff alleges he was excluded from that space on the spot, and that the exclusion was memorialized through a trespass citation. Yet when he asked what rule he had violated, Gaul allegedly identified none. The motion points generally to library authority and post hoc policy language, but that does not answer the due process problem as pleaded: Plaintiff was deprived of access without notice of a governing standard and without any meaningful opportunity to contest the basis for exclusion.

This claim is especially strong because the due process defect overlaps with the First Amendment defect. The same absence of standards that makes the exclusion viewpoint-discriminatory also makes it procedurally deficient. Where officials exercise standardless discretion to exclude a speaker from a public civic space, procedural due process is implicated. The Complaint plausibly alleges that happened here. At this stage, Plaintiff need not prove the full scope of the deprivation or the inadequacy of every possible after-the-fact remedy. He need only plausibly allege that he was excluded under standardless authority and without fair notice or meaningful process. He has done so. The due process claim should remain.

**Equal Protection**

Plaintiff also plausibly alleges selective enforcement sufficient to preserve an Equal Protection claim at the pleading stage. The Complaint alleges that Plaintiff engaged in silent, nonthreatening expression in a public library meeting room, yet was singled out for removal and a trespass citation only after Stiehler and Gaul objected to his expressive gesture, while other attendees present in the room were not removed or cited. On the pleadings, there is no identified written rule, no articulated safety rationale, and no neutral basis distinguishing Plaintiff from other persons allowed to remain. That is enough, at minimum, to plausibly allege that Defendants intentionally treated Plaintiff differently from similarly situated attendees because of disapproval of his expression, and that the unequal treatment lacked any rational, viewpoint-neutral basis. The Equal Protection claim substantially overlaps with

13

Plaintiff's First Amendment selective-enforcement theory, but it is sufficiently alleged and should not be dismissed at Rule 12(b)(6).

**Plaintiff Plausibly Alleges Vagueness and Arbitrary Enforcement**

The Complaint states an as-applied vagueness and arbitrary-enforcement claim. A policy is unconstitutionally vague if it fails to provide fair notice or invites arbitrary and discriminatory enforcement. *Grayned v. City of Rockford*, 408 U.S. 104, 108–09 (1972). Where First Amendment activity is involved, the concern is at its apex. *Minn. Voters All. v. Mansky*, 138 S. Ct. 1876, 1888–92 (2018).

That is exactly the problem alleged here. The Library's policies, as Plaintiff has already shown, do not identify silent political signs or a brief symbolic gesture as prohibited conduct. The policies speak in broad terms about disruption, conduct, or proper use. Yet the Complaint alleges Plaintiff was silent, calm, nonthreatening, and nonobstructive, and that Gaul could cite no rule at all when asked. The pleading thus supports both halves of a vagueness claim: no fair notice to Plaintiff, and arbitrary enforcement by Gaul.

The arbitrary-enforcement component is particularly clear. The entire sequence was triggered only after Stiehler complained. Gaul then acted without identifying any neutral standard. That is precisely the danger vague rules create: officials can enforce them only when a private complainer or offended listener objects, and only against the speech they dislike. The First Amendment and the Due Process Clause both forbid that.

14

This claim also provides an independent answer to Gaul's motion. Even if the Court were to accept that the Library may regulate some expressive conduct in some circumstances, the Complaint still alleges that the actual policies gave Plaintiff no notice and gave Gaul no objective standards. That is enough to defeat dismissal of the vagueness and arbitrary-enforcement claim.

Plaintiff does not plead a standalone conspiracy claim. As stated in the opposition to Stiehler's motion, the theory is joint action: Stiehler announced an enforceable speech standard in the library meeting room, identified Plaintiff's expression as violating that standard, told others "we have staff who are dealing with this," complained to Gaul, and Gaul immediately acted on that complaint by forbidding the expression and causing Plaintiff's removal. That Gaul was acting on Stiehler's complaint does not insulate him — an official remains constitutionally responsible when he enforces a private party's speech-based directive. *See Wickersham v. City of Columbia*, 371 F. Supp. 2d 1061 (W.D. Mo. 2005) (officers improperly removed individuals from a public event based solely on a private organizer's instructions)That is coordinated state action and direct personal participation, not some separate "meeting of the minds" conspiracy count.

For these reasons, the motion to strike should be denied.

| | |
|---|---|
| /s/Linus L. Baker | Certificate of Service |
| Linus L. Baker, KS 18197 | The above was provided notice to all |
| 6732 West 185th Terrace | parties entitled to such notice pursuant to |
| Stilwell, KS  66085-8922 | the Court's electronic filing system. |
| Telephone:  913.486.3913 | |
| Fax:         913.232.8734 | /s/Linus L. Baker |
| E-Mail: linusbaker@prodigy.net | Attorney for the plaintiff |
| Attorney for the plaintiff | |

15